**HANOVER TOWNSHIP FEDERATION OF TEACHERS LOCAL 1954 (AFL-CIO), an unincorporated voluntary association of teachers by Larry Kirgan and Irene Joyce, as representatives of said association, and of all teachers that belong to said Federation, et al., Plaintiffs-Appellants,**

v.

**HANOVER COMMUNITY SCHOOL CORPORATION et al., Defendants-Appellees.**

No. 18800.

United States Court of Appeals, Seventh Circuit.

Jan. 12, 1972.

Rehearing Denied March 14, 1972.

Saul I. Ruman, Hammond, Ind., for plaintiffs-appellants.

Dennis J. Stanton, Crown Point, Ind., for defendants-appellees.

Before SWYGERT, Chief Judge, and CUMMINGS and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Appellants, a teachers' union and 22 of its members, contend that a local school board's unfair labor practices are proscribed by the Civil Rights Acts, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), (4). The district court found merit in some, but not all, of their contentions. They appealed from two orders entered on August 3 and August 14, 1970, 318 F.Supp. 757, which dismissed their claims but ordered reinstatement of nine other teachers (who were plaintiffs in the court below) and enjoined defendants [1] from discriminating against members of appellant's union.

I.

The local union representing the teachers in the Hanover School District was organized in the 1969–70 school year. It selected six representatives to negotiate with the defendants. Although a few meetings were held, defendants refused to engage in meaningful bargaining with the union.

The school board met on April 14, 1970, to consider the reemployment of the teaching staff. A week later, nine of the most active leaders were notified that their contracts would not be renewed. On April 24, 1970, the discharged teachers and the union commenced this action.

On April 28, 1970, the defendants mailed to each teacher who had not been fired a contract for the 1970–71 academic year and a statement that the contract would have to be signed and returned by June 1. Apparently some teachers, not parties to this litigation, executed and returned the tendered contracts. The 22 individual appellants did not.

After the original complaint was filed, it was amended several times and a number of evidentiary hearings were held. The record on appeal does not include any of those transcripts,[2] but it is fair to infer from the docket entries that plaintiffs presented a substantial quantity of evidence relating both to the merits and to their request for a preliminary injunction during May and early June.

Before the evidentiary hearings had been completed, on June 18, 1970, plaintiffs filed their Third Amended Complaint which, for the first time, asserted a claim on behalf of the 22 appellants who had not returned the 1970–71 contracts mailed to them in April. In that pleading appellants alleged that the mailing

---

1. The local school corporation, the members of its board of trustees, the superintendent, and a school principal.

2. Although appellants' abstract is 187 pages long, apart from the pleadings and the August orders and memoranda, it consists largely of appellants' scholarly district court briefs which reviewed a multitude of NLRB cases.

of individual contracts violated a duty to negotiate a master agreement with the union and was intended to undermine and destroy the union, and to "violate the First Amendment rights of the said plaintiffs."[3] In explanation of their decision not to execute the individual agreements, appellants alleged:

> "27. That upon said receipt of the contract, twenty-two (22) of the union teachers believing it was a violation of the contract requiring a negotiation of a master contract and believing it a violation of the statutes of the State of Indiana and their constitutional rights to belong and act through a union and believing that under the statutes of the State of Indiana they are not required to execute a contract, said plaintiffs did not sign the contract nor have they resigned. That said school administration, the defendants, has made it known that said twenty-two (22) teachers will not be re-employed and are terminated."

They made no allegation that the contracts tendered to the 22 appellants were less favorable than those tendered to non-union teachers, or than the contracts for the previous year.

The trial resumed after the Third Amended Complaint was filed, but it does not appear that any answer to that pleading was filed by defendants. Appellants do not suggest that they were prevented from adducing any evidence relevant to the claims of the 22 individual appellants or indeed to any other issue. The trial concluded on July 10, 1970, written briefs were thereafter filed, and on August 3 and August 14, 1970, the court made its rulings.

In a carefully prepared memorandum, the district court found that the teaching contracts of the nine original individual plaintiffs were terminated in ret-

ribution for their union activities. The court held that: "By discharging the nine teachers for exercising that freedom of association guaranteed by the Constitution, the defendants have violated the civil rights of these plaintiffs." (A. 178) The defendants were ordered to offer those plaintiffs contracts for the 1970–71 year no less favorable than their 1969–70 contracts; futhermore, defendants were enjoined "from discriminating in any way against members of the Hanover Township Federation of Teachers for exercising their First Amendment right of association." (A. 179) No appeal was taken from this aspect of the order.

In a separate memorandum the court considered the contention that the action of the school board in sending out individual contracts constituted a failure to bargain in good faith with the union. He concluded that the claims of the 22 appellants raised state law issues, but did not present any federal question; he therefore dismissed them from the action. Finally, he also found that the union and its officers did not have standing under the Civil Rights Act and ordered them dismissed as parties. The 22 individuals and the union have appealed.

## II.

The First Amendment protects the right to advocate, either individually or through an association, and also the association's right to engage in advocacy on behalf of its members. N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; Eastern Railroad Presidents Conf. v. Noerr Motor Freight Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464. A State may not invade that constitutional protection either by a general advance prohibition against cer-

---

3. The allegations in paragraph 26 of the Third Amended Complaint set forth in detail the claim that the submission of individual contracts was a violation of defendants' obligation to negotiate a master agreement, was a breach of existing agreements, a violation of state law, a violation of the constitutions of both Indiana and the United States, and concluded with the sentence: "The object of the school board and defendants again being to undermine the Federation and violate the First Amendment rights of the said plaintiffs." (A. 47)

**460**

tain forms of advocacy, N. A. A. C. P. v. Button, *supra*, or by attempting to punish the expression of views that it opposes. *E. g.*, Brandenburg v. Ohio, 395 U. S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430; Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125. See also Musser v. Utah, 333 U.S. 95, 98–103, 68 S.Ct. 397, 92 L.Ed. 562 (Rutledge, J., dissenting). A public employee is protected against discharge in retaliation against the exercise of his constitutional rights, such as his right to speak freely on issues of public importance, Pickering v. Board of Education, 391 U.S. 563, 574–575, 88 S.Ct. 1731, 20 L.Ed.2d 811, his rights of association, Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L. Ed.2d 231, Mr. Justice Frankfurter dissenting at 496, 81 S.Ct. at 256, or his right to claim the privilege against self-incrimination when questioned about matters unrelated to the performance of his official duties, Uniformed Sanitation Men v. Commissioner of Sanitation, 392 U.S. 280, 284, 88 S.Ct. 1917, 20 L.Ed.2d 1089.

■■ With this background, and with cases in the non-public employee category upholding free speech and related rights in connection with labor matters,[4]

the courts, as the court below did in this action with respect to the nine teachers ordered reinstated, have accepted a general proposition that public employees cannot be discharged for engaging in "union activities." Thus, if there is a discharge because of union membership, the general constitutional right of free association, as recognized in N. A. A. C. P. v. Alabama ex rel. Patterson, 357 U. S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, and Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231,[5] and the free speech right recognized in Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811, are correctly applied to invalidate the discharge, since there is no reason to distinguish a union from any other association.[6]

■■ Such protected "union activities" include advocacy and persuasion in organizing the union and enlarging its membership, and also in the expression of its views to employees and to the public. For that reason, the State may not broadly condemn all union activities or discharge its employees simply because they join a union or participate in its activities. It does not follow, however, that all activities of a union or its members are constitutionally protected.[7]

---

4. See, *e. g.*, Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430; Thornhill v. Alabama, 310 U.S. 88, 102–103, 60 S.Ct. 736, 84 L.Ed. 1093; Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

5. This case referred to the necessary protection of the associational rights of non-tenure teachers who might otherwise have no job-related enforceable constitutional rights:
"Such interference with personal freedom is conspicuously accented when the teacher serves at the absolute will of those to whom the disclosure [of associational membership] must be made— those who any year can terminate the teacher's employment without bringing charges, without notice, without a hearing, without affording an opportunity to explain." 364 U.S. at 486, 81 S.Ct. at 251.
Whether the latter part of this statement shall remain true is presently before the Supreme Court. See cases cited in text and in note 18, Part IV, *infra*.

6. See McLaughlin v. Tilendis, 398 F.2d 287, 289 (7th Cir. 1968).

7. This court has already recognized as much:
"It is possible of course that at some future time plaintiffs may engage in union-related conduct justifying their dismissal." *Id.* at 289. The Supreme Court, in International Brotherhood of Teamsters Local 695 v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347, upheld a state's right to prohibit peaceful picketing the purpose of which was to coerce an employer to put pressure on his employees to join a union, in contravention of a public policy of the state that employees should have a free choice in making their decision. In Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834, a union sought to organize peddlers by picketing a wholesaler to induce the wholesaler not to sell to nonunion peddlers. The state courts, finding that such an agreement would constitute a conspiracy in restraint of trade in violation of the state

■ Thus, the economic activities of a group of persons (whether representing labor [8] or management [9]) who associate together to achieve a common purpose are not protected by the First Amendment. Such activities may be either prohibited or protected as a matter of legislative policy. Thus, some private employers may agree to fix prices [10] and others may not [11]; their employees' collective economic acivities are affirmatively protected by statutes which do much more than preserve their right to speak and to advocate.[12]

For purposes of decision we may, therefore, assume that the procedure followed by defendants in mailing individual contracts to union members while collective bargaining discussions were in progress would have been an unfair labor practice if the Labor-Management Relations Act were applicable, and that this procedure tended to undermine the economic strength of the union. It may also have deprived the teachers of benefits they sought to obtain by exercising their First Amendment rights. That amendment, however, provides no guarantee that a speech will persuade or that advocacy will be effective.

■■ Since the coverage of the relevant parts of the Civil Rights Act is no broader than the constitutional protection, those statutes are not equivalent to the Labor-Management Relations Act in the field of public employment. The district court correctly relied on our holding in Indianapolis Education Assn. v. Lewallen that ". . . there is no constitutional duty to bargain collectively with an exclusive bargaining agent." [13]

---

antitrust laws, enjoined the picketing. The Supreme Court affirmed unanimously.

8. See cases cited in note 7, *supra*. In the *Empire Storage* case there cited, the Supreme Court wrote:
 "And it is clear that appellants were doing more than exercising a right of free speech or press. . . . They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade." 336 U.S. at 503, 69 S.Ct. at 691.
 In Thomas v. Collins, Mr. Justice Douglas said in concurring:
 "But once he uses the *economic* power which he has over other men and their jobs to influence their action, he is doing more than exercising the freedom of speech protected by the First Amendment. *That is true whether he be an employer or an employee.* But as long as he does no more than speak he has the same unfettered right, no matter what side of an issue he espouses." 323 U.S. at 543–544, 65 S.Ct. at 329. (Emphasis added.)

9. See, e. g., such landmark antitrust cases as United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700; United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007.

10. See, e. g., 49 U.S.C. § 5b (common carriers may execute agreements on rates and other items, subject to ICC approval); 49 U.S.C. § 138 (airlines may make pooling and other agreements subject to C.A.B. approval); 7 U.S.C. § 291 (agricultural co-operatives).

11. See cases cited in note 9, *supra*.

12. See the National Labor Relations Act (Wagner Act) passed in 1935, 49 Stat. 449; the Labor-Management Relations Act of 1947, 61 Stat. 136; and the Labor-Management Reporting and Disclosure Act of 1959 (Landrum-Griffin Act), 73 Stat. 519.

13. "Such duty, when imposed, is imposed by statute. The refusal of the defendants-appellants to bargain in good faith does not equal a constitutional violation of plaintiffs-appellees' positive rights of association, free speech, petition, equal protection, or due process. Nor does the fact that the agreement to collectively bargain may be enforceable against a state elevate a contractual right to a constitutional right.
 "The allegations of the complaint certainly suggest the possibility that if this were an employment covered by LMRA, the School Board would be found by the NLRB to have committed an unfair labor practice. Such a possibility, however, does not argue for a federal court's assumption of jurisdiction on constitutional grounds." 72 LRRM 2071 at 2072 (1969).

The 22 appellants have not alleged, and apparently did not prove, any restriction on their right to join the union, to persuade others to join, or to advocate any specific course of action. Nothing in the record before us suggests that the contracts tendered to appellants were any less favorable than those accepted by nonunion teachers, or than those which defendants were required by the district court to submit to the nine reinstated union leaders. In short, we find nothing in the record supporting an argument that defendants retaliated or discriminated against the 22 appellants because of their union activities.[14]

■ Appellants have argued that the tendered contracts do not guarantee that they will receive the same extracurricular assignments as in the past. The absence of such a guarantee does not establish that any of the appellants will, in fact, be denied any opportunities to which they are entitled, or which they may reasonably anticipate, or that they will be treated any differently than nonunion teachers. Specific protection against the possibility of future retaliatory action is afforded by the provision in the district court order which prohibits defendants from discriminating against any member of the union. We therefore, agree with Judge Beamer's conclusion that the specific allegations made by the 22 individual appellants in their Third Amended Complaint did not state a claim for relief under 42 U.S.C. § 1983 or 28 U.S.C. § 1343(3), (4).

### III.

The major portion of appellants' brief in this court is directed against the district court's holding that the union did not have standing to participate in this litigation. Unquestionably, as the union argues, there are situations in which an association is the proper party to vindicate the constitutional rights of its membership as well as its own rights. N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405. We may assume that this litigation might have taken, or in future proceedings might take, a turn requiring participation by the union as a formal party. In the present posture of the case, however, the issue has no real significance.

As a practical matter, the same attorney represents both the union and its membership. The union did participate, apparently without restriction, in all of the proceedings in the court below as well as in this court. Insofar as the 22 individual appellants are involved, the addition of the union as a party will not create a constitutional issue that does not otherwise exist. Insofar as the nine reinstated teachers are concerned, complete relief was awarded by the district court. Thus, no purpose would be served by requiring the union to participate as a formal representative of any of the individual parties.

Insofar as the union asserts its own interests, the "standing" issue is somewhat different. The union contends that the actions of the defendants impaired its strength as an organization. However, unlike the situation in N. A. A. C. P. v. Button, this case does not involve any interference with the exercise of the organization's First Amendment right.

■ The economic strength of the union has allegedly been impaired by the termination of the individual appellants and by the refusal to bargain. To the extent that a federal court may grant relief against such economic injury under a Civil Rights Act, such relief has

14. The "activity" in this case is essentially an economic activity. The 22 teachers were not denied contracts. They were offered contracts. In a collective action freely engaged in they refused to sign, apparently because they thought that the procedure was illegal and represented a refusal to bargain with the union. Presumably, they hoped to exert economic pressure on the board to negotiate with the union. That such free exercise of their associational rights failed to bring success provides no basis for a federal claim, even if, as discussed in the text, *supra*, collective bargaining was mandated by state law.

already been decreed. The union has no right to any further relief. For this reason, even if the union had standing to participate in the litigation, its dismissal after the conclusion of the trial was harmless.

If facts should arise in the future which should make it appropriate for the union to assert a right to enforce the portion of the decree prohibiting discrimination against its members, we are satisfied that nothing in the orders entered on August 3, and August 14, 1970, would foreclose a fresh consideration of the union's interest in the controversy.

### IV.

 Appellants have also argued that the district court should have entered a declaratory judgment establishing a teacher's right to a hearing before the school board prior to termination of employment. The applicable statute, 28 U.S.C. § 2201, confers jurisdiction to enter such a judgment only "in a case of actual controversy." As we view the rights of the parties in this case, their argument is a request for an advisory opinion rather than a declaratory judgment. There is no teacher or former teacher before the court who was not either reinstated or offered a new contract.[15] We find nothing in the record before us to indicate that the board refused to renew the contract of any teacher who is not a party to the case.[16] In substance, appellants therefore are merely requesting us to provide

them with guidance for the future rather than to resolve a pending or threatened controversy between adverse parties. We have no power to render such advice;[17] in any event, more authoritative guidance on that issue is anticipated. See Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir. 1971), cert. granted 404 U.S. 909, 92 S. Ct. 227, 30 L.Ed.2d 181.[18]

The judgment is affirmed.

15. The nine reinstated teachers concede that their right to constitutional due process was satisfied by the full hearing granted by the district court in this litigation. The 22 other teachers have no standing to challenge the procedure to be followed when a teacher is not offered a new contract because all of them were offered new contracts.

16. Thus, even if the union had standing to seek relief on behalf of unspecified members, there are no allegations raising an actual controversy as to them. As to possible future dismissals, there is nothing in the record to indicate that the board

will not give the teachers whatever procedural protections the law then requires.

17. Hayburn's Case, 2 Dall. 409, 1 L.Ed. 436; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246. See also Coffman v. Breeze Corporations, Inc., 323 U.S. 316, 324, 65 S.Ct. 298, 89 L.Ed. 264.

18. See also Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), petition for certiorari filed Aug. 18, 1971, 40 U.S.L.W. 3126; Shirck v. Thomas, 447 F.2d 1025 (7th Cir. 1971), petition for certiorari filed Dec. 22, 1971, 40 U.S.L.W. 3303.