668 P.2d 96

Roy Dean HOLLOWAY, Plaintiff-Appellant,

v.

E.C. PALMER, individually, and as Sheriff of Ada County, Idaho, and R.W. Christensen, Dick Chastain, Hugh Brady, Dave Sarvis, and Matt O'Rourke, Jr., individually and as Commissioners of the Ada County Sheriff's Deputies Merit System, Defendants-Respondents.

No. 14031.

Supreme Court of Idaho.

June 3, 1983.

Rehearing Denied Sept. 8, 1983.

Frank W. Stoppello, Boise, for plaintiff-appellant.

Greg Bower, Pros. Atty., and Scott L. Campbell, Deputy Pros. Atty., James J. Davis, of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendants-respondents.

BISTLINE, Justice.

On September 14, 1978, Roy Dean Holloway was terminated from his position as sergeant with the Ada County Sheriff's Department (hereafter Department). Sgt. Holloway had been a member of the Department for four and one-half years prior to his termination and was undisputedly considered an officer in good standing prior to that time. In addition to being an officer with the Department, Sgt. Holloway had also been elected President of the Ada County Deputy Sheriff's Union in December of 1977, which Union consisted of fifty-

five members of the Department. The events which culminated in Sgt. Holloway's dismissal began with the Union's decision to sponsor a fund raiser, the proceeds of which were to be used to establish a fund to assist law enforcement officers who had suffered personal losses and to donate to local organizations dealing with deterrence, correction and rehabilitation of juvenile offenders.

On August 15, 1978, the Union decided to sponsor a western show at the Western Idaho Fairgrounds called the Merle Haggard-Marty Robbins Western Show. On or about March 28, 1978, the Union, through Sgt. Holloway, sent a letter to Sheriff Palmer notifying him of its intent to sponsor a fund raiser, similar to fund raisers which had been sponsored by other groups in the Sheriff's office in earlier years. The letter informed Sheriff Palmer that telephone solicitation would be used as the means of promoting the fund raiser.

Receipt of this letter by Sheriff Palmer prompted a meeting between the Sheriff and Sgt. Holloway. At this meeting the Sheriff informed Sgt. Holloway of his dislike of telephone solicitations and of past problems involving adverse public reaction to telephone solicitations. The Sheriff made it clear to Sgt. Holloway that he did not agree with the proposed solicitation, that he would not permit it, and that he would use any means to stop it, even to the extent of going to the news media. The Sheriff did not warn Sgt. Holloway about any possibility of termination or other punishment which would result from proceeding with the proposed fund raiser.

In August, the Union contracted with Wildwood Productions, Inc. (Wildwood), a known and reputable firm, which agreed to promote the show. The promoter, as an independent contractor, agreed to be solely responsible for the promotion and production of the show, which was to include the sale of advertising space in a souvenir booklet to businesses in the area, and the free distribution of the souvenir booklet to persons who attended the show. The contract required Wildwood to comply with all requests of the Union pertaining to the sales pitch used in the advertising solicitation [1] and also required Wildwood to comply with all Boise City, Ada County, and State of Idaho laws, ordinances and regulations which applied to the sale of advertising and tickets and to the presentation of the show. Ticket and advertising sales were the source of revenue anticipated under the contract to finance the show and benefit the Union. Neither Sgt. Holloway nor any other Union deputy took any direct part in the promotion of the show or sale of advertising, other than to account for receipts.

On or about August 25, 1978, Wildwood began contacting local businesses. No local solicitation license had been obtained at that time.[2]

On August 30, 1978, Sgt. Holloway was called to the Sheriff's office to discuss the promotion and the sales pitch used by Wildwood. The Sheriff told Sgt. Holloway that citizens had complained about the sales pitch and that the solicitors were representing that the funds were to be used for a "burnout fund" and were making other inaccurate statements. Although not entirely clear from the record, it appears that the Sheriff also told Sgt. Holloway at that time that Wildwood had been operating in violation of the Boise City Code by soliciting without a license. The Sheriff told Sgt. Holloway that if the Union was going to go

---

1. On or about August 25, 1978, Sgt. Holloway, as President of the Union, distributed a newsletter informing the Union membership that the Union intended to produce a fund raising concert. The letter also set forth the general sales pitch to be used by the promoter's sales personnel which specified that said personnel would state that they were "calling for the Ada County Deputy Sheriff's Union." A copy of this newsletter was also given to Gary Allen of Wildwood Productions.

2. Testimony was offered at the Merit Commission hearing that Wildwood did not obtain a local solicitation license because the work was being done on behalf of the nonprofit union chapter. Other local nonprofit groups, such as the Bronco Athletic Association and the Idaho Police Officers Association, which had previously sold similar advertising had not been required by the City to obtain solicitation licenses.

around him and proceed with the solicitation, it had to be legal, and that the solicitors could not use the Department's name.[3] The Sheriff told Sgt. Holloway to take county time, if necessary, but to get the thing straightened out. That same day, in compliance with the Sheriff's request, Sgt. Holloway notified Wildwood of the Sheriff's problems and criticisms and asked that the problems be corrected. That day, Wildwood made its application for a license to the Boise City License Commission. The following evening, August 31, 1978, a hearing was held before Mr. Keith Kendall of the License Commission. No decision on the requirement of a license was made at that time and Wildwood was not asked to discontinue its promotion until a decision was made thereon.

On September 7, 1978, Sgt. Holloway again met with Sheriff Palmer. The Sheriff criticized the sales pitch used by Wildwood. The Sheriff asked one of his officers to call and record the exact language being used to sell the advertising. The Wildwood employee who responded to this telephone call stated "I'm calling for the Sheriff's Department and the Sheriff's Deputies Union . . . ."

Immediately thereafter, Sgt. Holloway contacted the principals of Wildwood and again asked that Wildwood not make any reference to the Sheriff himself or to the Department. In addition, he composed a letter which again spelled out a proper format which would comply with Sheriff Palmer's wishes.

The next day, September 8, 1978, Wildwood was informed that the License Commission had approved its application for a license but that a $5,000 cash bond would have to be posted. Because the Union could not immediately supply such a bond, Wildwood immediately terminated its solicitation campaign.

Six days later on September 14, 1978, Sgt. Holloway was on duty when he was called to the office of Sheriff Palmer. As he stepped into the office, Sgt. Holloway was handed his "termination" letter notifying him of his dismissal, "effective immediately." The letter recited that Sgt. Holloway had violated a direct order to stop the promotion of the show, was continuing to engage in illegal solicitations, had been found to be in violation of a state statute, and was bringing the Department into disrepute. Sgt. Holloway responded that the solicitation by Wildwood had ended on September 8, and that no orders had ever been given regarding Wildwood's actions. The Sheriff then took back the letter and stated he would redraft it, but that Sgt. Holloway remained fired. Sheriff Palmer testified that he tore up the original termination letter and sent Sgt. Holloway a termination letter which deleted language referring to continuing solicitations.

Shortly after Sgt. Holloway was fired, Greg Cornwall, vice-president of the Union, was approached by Personnel Director Larry Richards, and was told he would also have been fired if he had signed the contract executed between the Union and Wildwood.

Sheriff Palmer admitted at the hearing that after the termination he had joked in front of some Boise City police officers that he could not find anyone to assume the presidency of the Union after he fired Sgt. Holloway.

As required to preserve his rights under Ada County Ordinance Number 60, Sgt. Holloway appealed his termination to the Ada County Sheriff's Deputies Merit System Commission (hereafter Commission). Subsequent to the filing of that appeal and before the hearing before the Commission, Sgt. Holloway brought an action in the

---

**3.** In explaining the order given at the August 30th meeting, Sheriff Palmer testified as follows:

"THE WITNESS: [Sheriff Palmer] Well my order at that time—if I can explain, Mr. Boyd, he couldn't get the sheriff's office involved in it. No way could the sheriff's of-

fice be involved. And that was the order then.

"Q. BY MR. STOPPELLO: Okay. But he could go ahead with the promotion as long as it was legal?

"A. Yes, I guess he could. I *couldn't stop him.*" (Emphasis added.)

district court against the Commission and Sheriff Palmer, alleging violation of his constitutional rights by the termination and requesting a preliminary injunction to prohibit the Commission from hearing the case. The district court refused to enjoin the hearing before the Commission, but ruled that the complaint would not be dismissed and that the court would later hear the complaint if Sgt. Holloway was not satisfied with the outcome of the hearing before the Commission.

After a hearing on November 14 and 15, 1978, the Commission issued its decision. Three members of the five member Commission upheld the termination of Sgt. Holloway, one member dissented and one member was absent from the hearing. Sgt. Holloway then filed an amended complaint in the district court which included a second count requesting a review of the Commission's decision, attorney's fees, and damages. Pursuant to a stipulation of the parties, the district court heard the second count as a writ of review. In its decision of July 7, 1980, the district court remanded the matter to the Commission for additional findings:

> "I am unable to determine whether there is substantial evidence to support the findings of the Commission, and whether reasonable minds might accept the evidence as adequate to support the same, because I conclude that the findings of the Commission are not sufficient-

ly clear and concise. There is not, in my opinion, a sufficient adjudication of exactly what activity of the petitioner was objectionable, nor what statute, ordinance, established policy, rule or regulation, (whether Sec. 48–603(a) of the Idaho Code, and/or others) proscribed such activity. I must conclude as a matter of law that the findings are not sufficiently extensive and exacting to support the Commission's conclusions that the Plaintiff's employment was terminated in good faith and for cause. The findings leave open to speculation the question of the nature of the 'involvement of the Plaintiff'; the nature of the 'activity which the Plaintiff was so involved in'; the nature of the 'public criticism' resulting therefrom; etc."

A motion to amend this order was immediately filed by Sgt. Holloway on the basis that the "Merit Commission is no longer in existence and therefore without authority to enter additional findings of fact." On October 6, 1980, the district court found that a remand would indeed be ineffective because the Commission was no longer in existence.[4]

On December 22, 1980, the district court substituted its own findings of fact[5] for those of the Commission and concluded as a matter of law that Sgt. Holloway had been terminated for cause and in good faith.

---

**4.** "I must agree with Plaintiff that the remand, under the circumstances brought out on the hearing of this motion, is ineffective. It appears that Ada County Ordinance No. 60, which by its terms creates the Merit System Commission, contains the following language in Section 21: 'The provisions of this ordinance shall become operable for each fiscal year only after the prior approval of the Board of County Commissioners during the annual budget procedures of a table of organization describing the positions and salaries available in the sheriff's office for the ensuing year.' Plaintiff states that no such table has been submitted or approved for the current fiscal year, and that therefore the Merit Commission is no longer in existence and is without authority to enter additional findings of fact on remand. Defendant has not disputed the claim that Ordinance No. 60 has

not been re-enacted by the Ada County Commissioners for the current year." *Holloway v. Palmer,* No. 65702, Slip op. at 8 (Fourth Dist. Idaho 1980).

**5.** In its October 6, 1980 opinion, the district court determined the scope of its review in light of the fact that a remand to the Commission would be ineffective thus:

> "[T]his Court's order for remand must be amended. The Court will have to proceed to review the entire record before the Commission as it presently stands and enter its own findings of fact and conclusions of law, based upon substantial evidence in such record, the procedure approved by our Supreme Court in the *Local 1494* case. It is the only practical solution to the dilemma presented here." *Holloway v. Palmer,* No. 65702, Slip Op. at 9–10 (Fourth Dist. Idaho 1980).

The district court thereby affirmed the Merit Commission decision.[6]

## I. SCOPE OF REVIEW

In *Local 1494 v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978), this Court determined the scope of district courts' judicial review of agency decisions. That case involved a dispute between the City of Coeur d'Alene and Local 1494 of the International Association of Firefighters, the collective bargaining agent for seventeen firefighters who were terminated for their participation in a strike against the City. The Civil Service Commission held a public hearing and issued a decision finding that the strike was illegal and that the discharge of the firefighters was justified. The Commission's decision was conclusory and incomplete in form setting forth no factual basis to support its ultimate conclusion that the City acted in good faith and for cause. The district court on appeal entered its own findings of fact and conclusions of law. This Court reviewed the district court procedure under the substantial evidence rule which "is said to be a 'middle position' which precludes a *de novo* hearing but which nonetheless requires a *serious review* which goes beyond the mere ascertainment of procedural regularity." *Id.* at 633, 586 P.2d at 1349 (emphasis added). "[T]he substantial evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.'" *Id.* at 634, 586 P.2d at 1350 (citing 4 Davis, Administrative Law Text § 29.01–02 at 525– 530). In *Local 1494,* we held that this substantial evidence standard is flexible with its application depending on such factors as: (1) the character of the administrative agency—which in that case differed significantly from that of the major commissions having statewide jurisdiction; (2) the structural make-up and function of the agency, i.e., the degree of impartiality and disinterested justice which could be exercised by

the agency; (3) the character of the agency, the roles committed to it by statute and the manner in which it functioned; and (4) the nature of the issue being reviewed. Applying these factors, we upheld the district court's liberal application of the substantial evidence rule in conducting a *full and thorough* review of the civil service determination. We held that the district court's substitution of findings of fact and conclusions of law for that of the Commission was proper:

> "On judicial review of a civil service commission determination, the district court *is* required to conduct a full review of the whole record and, where the commission's conclusions are unsupported by substantial evidence, its function encompasses stating, both for the benefit of the parties and this Court, its reasoning and conclusions which very well may but need not take the form of findings and conclusions. That is exactly what the trial court did in the present case. That the trial court, in rendering its appellate decision, did so by way of enumerated conclusions and enumerated findings, rather than in appellate opinion form, is without significance."

*Id.* at 638, 586 P.2d at 1354 (emphasis in original).

The district court in the present case properly exercised the type of appellate review contemplated in *Local 1494.* Applying the rule set forth in *Local 1494,* we hold that it was necessary for the district court to liberally apply the substantial evidence rule in conducting a full and thorough review of the agency record: (1) Like the Civil Service Commission in *Local 1494,* the agency here involved was a local commission unaccustomed to addressing problems of the magnitude of an alleged dismissal of a classified employee for union activities; (2) although the Commission had outward indices of impartiality,[7] it was alleged by

---

**6.** The district court based its decision on the record before the Commission. The district court did not hold a trial *de novo* or open the record for additional evidence.

**7.** The Commission was composed of five persons consisting of two members appointed by the Sheriff, two members appointed by the Sheriff's deputies and one member appointed by the Ada County Commissioners.

Sgt. Holloway that the Commission had failed to exercise or assume jurisdiction; that the Commission had delegated its authority to Sheriff Palmer; and that the Commission had failed to perform its obligation to adopt and publish rules and regulations. These allegations were at no time controverted by either the Merit Commission or Sheriff Palmer; (3) The nature of the issue involved in this case is one not within the expertise of the Commission. As we stated in *Local 1494:*

"In the present case, the concern is not with an administrative/legislative type decision ... within the expertise of a specialized agency but rather with ... 'the right to a continual employment' ... We have recently stated that such a right is a constitutionally protected property interest."

*Id.* at 636, 586 P.2d at 1352.

An additional factor in the present case is that, unlike in *Local 1494,* the district court did not have the opportunity to remand to the agency for more specific findings, the Commission becoming. defunct during the pendency of Sgt. Holloway's appeal to the district court.

*Local 1494* also established the scope of this Court's review of an agency decision. "On appeal, it is our task to make the same review of the commission's action as did the district court in order to determine whether, on the whole record, the commission's decision was substantially supported by the evidence and by applicable law." 99 Idaho at 638, 586 P.2d at 1354. Under this standard, this Court is empowered to exercise the same type of appellate review as the district court is authorized to exercise over agency decisions. Accordingly, we must here make a *full and thorough review* of the Commission record to determine if there is substantial evidence to support the Commission's conclusion that Sgt. Holloway's dismissal was made for cause and in good faith.[8]

## II. REVIEW OF THE COMMISSION'S DECISION

The Commission, in its Letter Memorandum Opinion dated November 17, 1978, determined that Sgt. Holloway was dismissed for cause and in good faith on the basis that:

"Roy D. Holloway was employed and promoted by the Ada County Sheriff and functioned as a satisfactory employee until Mr. Holloway involved himself in an activity which created a condition of public criticism of the Ada County Sheriff's Department of which Mr. Holloway maintained control and responsibility.

"The Ada County Sheriff is responsible for the conduct and integrity of the operations of the Ada County Sheriff's Department and a Manual of Conduct and Ethics sets forth required conditions of employee conduct. The Ada County Sheriff counseled and directed Mr. Holloway regarding the adverse effects and requested corrective measures of Mr. Holloway's action on multiple occasions. Contrary to the proper conduct of a prudent employee, Mr. Holloway failed to act in a proper manner in order to avoid conditions which would generate public criticism directed toward the Ada County Sheriff's Department and further failed to exert necessary and timely efforts within his authority, to terminate conditions generating aforementioned criticisms when identified and instructed by the Ada County Sheriff.

"Mr. Holloway, the employee, had the responsibility to conduct himself in an appropriate manner as identified in the Manual of Conduct and Ethics. Mr. Holloway was the responsible individual for an adverse condition unacceptable to the proper conduct of the Ada County Sheriff's Department of which E.C. Palmer, Sheriff, is the responsible authority for such proper conduct. Mr. Holloway was advised to correct the identified cause of

---

8.  Ada County Ordinance No. 60 § 11 provides: "[N]o person in the classified merit system who has been permanently appointed or inducted into the merit system ... shall be removed, suspended, or demoted, except for *cause, in good faith* ...." (Emphasis added.)

criticism. He failed to do so and was terminated, an action within, and appropriate of the authority of the Ada County Sheriff.

. . . .

"From the foregoing it is concluded as a matter of law that the dismissal was in good faith and for cause."

■ In determining what constitutes cause within the meaning of Ada County Ordinance No. 60 § 11, the Commission is constrained by the protections afforded an individual by the first amendment. Sgt. Holloway contends that he was terminated without cause for "union activity" in violation of his fundamental rights of free assembly and association guaranteed under the United States and Idaho Constitutions. If Sgt. Holloway was indeed terminated for union activities protected under the first amendment, his termination could not have been made with cause and must be reversed.

The United States Constitution, Amendment 1, provides that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the government for a redress of grievances." [9]

The first amendment has been interpreted to protect individuals' rights to form and join labor unions and associations without fear of retaliation. *Smith v. Arkansas State Highway Employers, Local 1315,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979); *Arkansas State Highway Employees Local 1315 v. Kell,* 628 F.2d 1099 (8th Cir.1980); *New Orleans Steamship Ass'n v. General Longshore Workers,* 626 F.2d 455 (5th Cir.1980), *affirmed sub nom, Jackson Bulk Terminals, Inc. v. International Longshoremen's Ass'n,* 457 U.S. 702, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982).

"[T]he courts . . . have accepted a general proposition that public employees cannot be discharged for engaging in 'union activities.' Thus, if there is a discharge because of union membership, the general constitutional right of free association . . . and the free speech right . . . are correctly applied to invalidate the discharge, since there is no reason to distinguish a union from any other· association."

*Hanover Township Federation of Teachers Local 1954 v. Hanover Community School Corp.,* 457 F.2d 456, 460 (7th Cir. 1972).

It has been established that "[a]ll speech, press, and associational relationships are presumptively protected by the first amendment; the burden rests on the government to establish that the particular expressions or relationships are outside its reach." *Bursey v. United States,* 466 F.2d 1059, 1082 (9th Cir.1972). "[F]reedoms of speech and of press, of assembly, and of worship may not be infringed on [rational basis] grounds. They are susceptible of restriction only to prevent *grave and immediate danger* to interests the state may lawfully protect." *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 639, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628 (1943) (emphasis added).

It is this Court's duty to examine the record before the Commission to determine whether there is substantial evidence to support the Commission's determination that the Sheriff terminated Sgt. Holloway for cause and in good faith. In so doing, we must determine if the Sheriff met his burden of demonstrating that the actions of Sgt. Holloway presented such a "grave and immediate danger" to legitimate state interests as to constitute cause for his dismissal.

### A. Public Criticism

■ One of the grounds stated by the Commission for upholding Sgt. Holloway's dismissal was that "Mr. Holloway involved

[9]. The Idaho Constitution, Art. 1, § 10, similarly provides that:

"The people shall have the right to assemble in a peaceable manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances."

himself in an activity which created a condition of public criticism of the Ada County Sheriff's Department . . . ." The Sheriff testified before the Commission that he received complaints from citizens that they were confused by the solicitation and did not know whether the Union was sponsoring the fund raiser or whether the Department was sponsoring it. However, it is uncontroverted that the Sheriff had received similar citizen complaints when fund raisers were previously sponsored by the Deputy Sheriff's Association and the Sheriff's Reserve, both of which are non-union organizations connected with the Sheriff's Department. All of the businesses contacted which ultimately purchased advertising space accurately made their checks payable to the Union rather than to the Sheriff's Department.[10] Additionally, at least some of the controversy engendered by the solicitation was the result of erroneous statements made by the Sheriff himself. The following testimony was received at the Merit Commission hearing:

"MR. O'ROURKE [Commissioner]: [I]t was reported in the news media, evidently at the time of this controversy, that the promoter did, in fact, leave town with the receipts and the show was cancelled and that somehow people were bilked out of funds. I don't know if that is something that was alluded to in the media or whether it was actually fact. Do you have any knowledge of that?

"THE WITNESS [Sgt. Holloway]: I saw a television broadcast in that Sheriff Palmer said that these people had left town with $18,000. . . .

"MR. O'ROURKE: Do you think that Sheriff Palmer's statement there had impugned the character of the people in Wildwood Productions?

"THE WITNESS: I believe so, yes.

. . . .

"MR. O'ROURKE: Do you also think that possibly some of the complaints were generated by Sheriff Palmer's comments?

"THE WITNESS: I believe so. . . ."

Sheriff Palmer admitted making such a comment:

"Q. [By Mr. Stoppello to Sheriff Palmer] Well, did you not in fact, in front of Channel 7 news, make a statement after this promotion began in August that you understood that the proceeds from the advertising sales had left town? Did you ever make that statement?

"A. [Sheriff Palmer] Yes."

It is uncontroverted that Wildwood did not leave town with the funds and that the Union received all funds rightfully belonging to it from the fund raiser.[11]

Although outwardly concerned with public criticism engendered by the solicitation, Sheriff Palmer never notified Sgt. Holloway that he would be disciplined or terminated if the source of the criticism continued. In fact he did not terminate Sgt. Holloway until six days after Wildwood had, on its own initiative, stopped the solicitation, thereby removing any grounds for any further public criticism of the Department. Sheriff Palmer originally handed Sgt. Holloway a termination letter which stated that Sgt. Holloway had failed to obey three direct orders and that to that date, September 14, 1978, the solicitation was continuing. Sgt. Holloway testified that:

"I, you know, explained to him that no, the solicitation had been stopped last Friday, which was the 8th of September, was the last day that there was soliciting.

"And he lined that out and said that if that's so, you know, I'll just redraft the letter and make it correct."

---

10. The Sheriff testified that many people who had purchased advertising complained that they were confused as to the identity of the sponsor of the show, however, he could only remember the name of one person in particular. The Sheriff testified that this person had said he was misled as to whether the Union or the Department was sponsoring the show. However, Sgt. Holloway introduced into evidence a check written by this same person to the "Ada County Sheriff's Union," rather than to the Sheriff's Department.

11. Sheriff Palmer testified at the Commission hearing that he had threatened Sgt. Holloway at their first meeting regarding the fund raiser that "I said I would even go to the news media if it was necessary to stop him."

The Sheriff failed to offer sufficient evidence to show that there had been any public criticism differing from that received when other non-union departmental organizations had previously sponsored fund raisers. There was insufficient evidence to show that the Sheriff was indeed concerned about unfavorable public criticism, having himself engaged in actions guaranteed to result in such criticisms. There was also insufficient evidence offered to support a finding that the Sheriff acted in response to the public criticism engendered by the fund raiser when he neither took action nor threatened Sgt. Holloway with any action during the course of the solicitation. Sheriff Palmer did not terminate Sgt. Holloway until *six* days after the solicitation had been stopped by Wildwood on its own initiative. It is thus clear that there is not substantial evidence to support a finding that any public criticism engendered by the solicitation constituted such a "grave and immediate danger" to a legitimate state interest that Sheriff Palmer had "cause" to terminate Sgt. Holloway.

B. *Necessary and Timely Efforts*

■ The Commission upheld Sgt. Holloway's dismissal on the further ground that Sgt. Holloway "failed to exert necessary and timely efforts within his authority, to terminate conditions generating aforementioned criticisms when identified and instructed by the Ada County Sheriff."

There was no evidence presented to the Commission that Sgt. Holloway did not immediately act on each and every one of the Sheriff's requests or orders. There were three meetings at which the Sheriff voiced opposition to some facet of the solicitation scheme. At the first meeting, the Sheriff essentially told Sgt. Holloway not to go through with the telephone solicitation at all. However, this order or request was rescinded by the Sheriff at later meetings at which he told Sgt. Holloway that "[i]f he was going to do it, he had to be legal." In response to the question by counsel for Sgt. Holloway: "But he could go ahead with the

promotion as long as it was legal?" Sheriff Palmer answered, "Yes, I guess he could. I couldn't stop him." After the second meeting on August 30, 1978, Sgt. Holloway notified Wildwood of the Sheriff's complaints and requested that the cause of the complaints be rectified. It was at this time that Wildwood applied for a solicitation license with the Boise City License Commission. After the third meeting on September 7, 1978, Sgt. Holloway contacted Wildwood and again asked that no reference be made in the solicitation to the Sheriff or the Department. In addition, he composed a letter which again spelled out a proper solicitation format which would comply with the Sheriff's wishes.[12] The following day, the solicitation was discontinued by Wildwood on its own initiative after it was notified that a $5,000 bond would have to be posted in order to obtain a license from the Boise City License Commission.

Six days after the solicitation was discontinued, on September 14, 1978, Sgt. Holloway was on duty when he was called to the office of Sheriff Palmer. As he stepped into the office, Sgt. Holloway was handed his "termination" letter notifying him of his dismissal, "effective immediately." The record clearly demonstrates that Sgt. Holloway did everything within his power to comply with the Sheriff's wishes and to not bring either the Sheriff or the Sheriff's Department into any disrepute. Thus, we hold that there is not substantial evidence to support the Commission's finding that Sgt. Holloway "failed to exert necessary and timely efforts ... to terminate conditions generating aforementioned criticisms when identified and instructed by the Ada County Sheriff." Therefore, the record cannot support a determination that there existed such a "grave and immediate danger" to legitimate state interests as to constitute "cause" for Sgt. Holloway's dismissal.

III. INDEPENDENT REVIEW

■ Under the rule established in *Local 1494* this Court, upon a determination that

---

12. There was no need for Sgt. Holloway to deliver this letter to Wildwood because by the

next day, Wildwood had discontinued its telephone solicitation.

**230**

an agency's decision is not supported by applicable law or by substantial evidence, must independently review the agency record to determine if there is any basis in law and fact to support its ultimate decision. If there is, we must uphold the Commission's decision and set forth the basis for so doing.

■ Sheriff Palmer, in his termination letter of September 14, 1978, gave Sgt. Holloway three reasons for his dismissal: (1) failure to obey a direct order; (2) violation of a state statute; and (3) conduct unbecoming an officer that brings the department into disrepute. It is unnecessary to readdress the first and third stated reasons, based on our foregoing determination that these reasons did not provide an adequate basis for Sgt. Holloway's dismissal.

The letter apprising Sgt. Holloway of his termination stated:

"*Violation of state statute.* Via your telephone solicitation scheme you have been found by the Idaho State Attorney General's Office to be in violation of certain sections of the Consumer Protection Act. Additionally you have been found to be in violation of the Boise City Municipal Code regarding licensing requirements for telephone solicitation."

On September 15, 1978, one day *after* Sgt. Holloway's termination, the Idaho Attorney General's office wrote Sheriff Palmer a letter informing him that Wildwood had apparently violated the Consumer Protection Act:

"Based upon information we have recently received, it appears that there are violations of the Idaho Consumer Protection Act in the solicitation of *Wildwood Productions, Inc.,* . . . .

. . . .

"It would appear that *Wildwood Productions, Inc.,* has unlawfully attempted to use the name of the sheriff's department to promote its solicitation, without

stating who the real principals are. Please be advised that our office will continue to pursue this matter, and to seek restitution."

Respondent's Exhibit 11—Letter from Attorney General Wayne Kidwell to C.E. Palmer (September 15, 1978) (emphasis added).

Although this letter shows that *Wildwood* was apparently acting in violation of the Idaho Consumer Protection Act, it does not charge Sgt. Holloway or any other Union member with such violations.[13] The record reflects that neither Sgt. Holloway nor any other Union member ever directly engaged in the solicitation themselves. The contract signed by Wildwood also provided that Wildwood would comply with all state laws relating to the sale of advertising. Sgt. Holloway never authorized Wildwood to implicate the Sheriff's Department in the fund raising. The evidence previously summarized in this opinion reflects that Sgt. Holloway, far from authorizing the sales pitch used by Wildwood, did everything in his power to ensure that Wildwood would represent that it was acting only on the behalf of the Union.

Sgt. Holloway was never found to be in violation of the Boise City licensing requirements. On August 30, 1978, Sgt. Holloway was informed by the Sheriff that Wildwood, by not having obtained a solicitation license, was probably acting in violation of the City's licensing requirements. That same day Wildwood applied for a license with the Boise City Licensing Commission. No decision on the license requirement was made at the time of the application and no request was made of Wildwood to discontinue its promotion until such time as a decision was made. On September 8, 1978, Wildwood was informed that a license was required together with a $5,000 bond. Un-

---

13. Mr. Rourke, Merit System Commissioner, asked Sgt. Holloway the following question:
  "Were you ever, Mr. Holloway—Sergeant Holloway, were you ever contacted by any law enforcement agencies, attorney general's office, city police department, concerning ille-

gal activities resulting from the carrying on of this solicitation? In other words, were you ever informed by any law enforcement agency that you were being held responsible for a violation of the law?"
  To which Sgt. Holloway replied "No."

able to raise the $5,000 bond, Wildwood immediately discontinued the solicitation.

There is no substantial evidence in the record to demonstrate that Sgt. Holloway violated either the Idaho Consumer Protection Act or the Boise City Code licensing requirements. Accordingly, the record cannot support a determination that there existed such a "grave and immediate danger" to legitimate state interests as to constitute "cause" for Sgt. Holloway's dismissal.

For the foregoing reasons, we hold that there is not sufficient evidence in the record to uphold the Commission's ultimate determination that Sgt. Holloway was dismissed for cause and in good faith.

### IV.

Sgt. Holloway additionally argues that (1) the district court erred in not granting his petition to enjoin the Commission from determining the validity of his dismissal; (2) there was not a quorum of the Commission present to determine the validity of his dismissal; and (3) his dismissal without pre-termination notice or an opportunity to respond violated his constitutional rights to due process. Given our holding in this case, we find it unnecessary to address these additional allegations.

The judgment is reversed and remanded to the district court for entry of judgment of reinstatement with rank, seniority, benefits, privileges, and back pay (after taking into consideration any income earned in mitigation).

Costs to appellant.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, dissenting:

The majority opinion as written abandons our traditional appellate function and presumes to perform the factfinding function

reserved to the trial courts and commissions. I disagree with any approach to an appellate case in which this Court retries the facts on appeal.

The majority purports to follow *Local 1494 v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1356 (1978), for guidance in the present case. The two cases are substantially similar and the scope of review enunciated in that case should guide our review in the present case. The *Local 1494* case also involved the termination of public employees. In that case the Coeur d'Alene Civil Service Commission held a public hearing and issued its decision affirming the discharge of those employees. In the present case the hearing was held before a merit commission and was presided over by a referee, who was an experienced and competent attorney and who provided assistance and guidance to the commission.[1] Based upon the recommendations of the hearing examiner the commission ruled that good cause existed for the discharge of the public employee. However, in both this case and in *Local 1494* the district courts concluded that the local commissions issued inadequate findings of fact, and so the district courts made additional findings. In the *Local 1494* case, we ruled that where such a commission submits inadequate findings and conclusions the district court, in reviewing the entire record to determine whether the commission's decisions are supported by substantial evidence, may make additional findings, but only to explain its review of the case. The ultimate factfinder is still the commission. The district court in this case did just that and developed extensive findings of fact and conclusions of law, all of which are supported by the record, just as was the case in *Local 1494.*

Our function on appeal in this case is set out in *Local 1494:*

"On appeal, it is our task to make the same review of the commission's action as

---

1. The Court in *Local 1494* did note the following:

"The commission appears to have performed its functions without the benefit of any staff, legal or investigative . . . ."

Apparently, this Court considered that factor in determining the standard of review. However, in this case the merit commission had the benefit of a competent and experienced lawyer as a hearing examiner who aided the commission in its factfinding process.

did the district court in order to determine whether, on the whole record, the commission's decision was substantially supported by the evidence and by applicable law." 99 Idaho at 638, 586 P.2d at 1354.

Thus, our review requires us to examine the whole record; however, the purpose is to determine if the commission's findings and conclusions are supported by substantial competent evidence.

The commission in this case essentially found that there was good cause for the dismissal of appellant. The commission's findings, though not detailed, indicate the following:

"The Ada County Sheriff counseled and directed Mr. Holloway regarding the adverse effects and requested corrective measures of Mr. Holloway's action on multiple occasions. Contrary to the proper conduct of a prudent employee, Mr. Holloway failed to act in a proper manner in order to avoid conditions which would generate public criticism directed toward the Ada County Sheriff's Department and further failed to exert necessary and timely efforts within his authority, to terminate conditions generating aforementioned criticisms when identified and instructed by the Ada County Sheriff.... Mr. Holloway was the responsible individual for an adverse condition unacceptable to the proper conduct of the Ada County Sheriff's Department of which E.C. Palmer, Sheriff, is the responsible authority for such proper conduct. Mr. Holloway was advised to correct the identified cause of criticism. He failed to do so and was terminated, an action within, and appropriate of the authority of the Ada County Sheriff."

Just as was the case in *Local 1494,* the district court, after its review of the entire record, developed even more substantial findings of fact and conclusions, all of which essentially supported the findings of the commission. Included below is an excerpt from the ultimate conclusions of the district court.

"Sheriff Palmer had good cause to terminate Sgt. Holloway's employment because:

(a) The solicitation was deceptive.

(b) The solicitation violated the Idaho Consumer Protection Act.

(c) The solicitations were not properly licensed.

(d) The solicitation was bringing the Sheriff's Office into disrepute.

(e) The solicitations were not using the 'sales pitch' Holloway had told union members would be used.

(f) It is appropriate to require members of a law enforcement agency to maintain a high level of moral and legal integrity, and to avoid giving any appearance to the public that such is not the case.

(g) The deceptive, unlicensed solicitations continued despite the Sheriff's continuing protests about it to Holloway over a considerable period of time.

(h) *Sgt. Holloway, on behalf of the Union, had full authority to control the manner in which Wildwood Productions was conducting the solicitation of the business people of Ada County but failed to do so after notice and opportunity required it.*

(i) Holloway permitted improper solicitations even after telling union members otherwise in a newsletter, and was not acting with union authorization in not stopping Wildwood from improper soliciting.

(j) Sgt. Holloway made no reasonable effort, either through or on behalf of the Union, to make Wildwood Productions solicit in a proper and legal manner. His attitude and actions gave an appearance that he was as concerned about any financial detriment to the solicitation as in correcting it, further indicated in appellant's Exhibit 7.

"Sheriff Palmer acted in good faith in the termination since:

(a) He repeatedly and consistently made it clear to Sgt. Holloway, ever

since he was advised on March 28, 1978, of the proposed manner of solicitation, and continuing until the termination on September 14, 1978, that there had been past problems with telephone solicitations, that he was opposed to it, and that they must be legally conducted.

(b) A written letter at the time of termination clearly and sufficiently explained the reasons for Holloway's termination." (Emphasis added.)

The findings of the commission are fully supported by the findings made by the district court, and the findings of both tribunals are supported by substantial, competent evidence in the record. For example, one of the critical findings, Finding (h), is supported by testimony from Sgt. Holloway himself indicating that a clause in the contract pertaining to the sales pitch used gave the right to control that sales pitch to the union, and specifically to Roy Holloway as the head of the union. Sgt. Holloway's testimony also indicates that he in fact exercised his control or right to control the sales pitch, albeit inadequately or unsuccessfully. The contract itself, Exhibit 2, signed by Roy Holloway, was in evidence. Testimony by Sheriff Palmer, the promoter Gary Allen, and Sgt. Holloway indicated that Sgt. Holloway had the right to control the solicitations. Finding (i) is supported by evidence that up until September 7, 1978, long after Sgt. Holloway had represented to the union and to Sheriff Palmer that improper solicitations were not being conducted, a taped trial telephone call was placed to the solicitor in which the solicitor was still misrepresenting its affiliation. The other findings and conclusions of the district court, and in turn the findings of the commission, are supported by substantial, competent evidence.

On appeal, the appellant has the burden of proving error. Because of this, we must view the evidence in a light most favorable to the decision of the factfinder. *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979); *Furness v. Park,* 98 Idaho 617, 570 P.2d 854 (1977); *Brizendine v. Nampa Meridian Irr. Dist.,* 97 Idaho 580, 548 P.2d 80 (1976).* In the present case, the majority has done just the opposite. They have taken the evidence and viewed it in a light most favorable to appellant in order to reach their factual result. Because the findings of the district court and the commission are supported by substantial, competent evidence, the ultimate finding of the commission and the district court that there was good cause to terminate the employee in the present case should be upheld. While individual members of this Court might have concluded otherwise if we were the finders of fact, we are not. This Court cannot retry these cases. By doing so, we are encouraging a flood of appeals. If we continually retry the facts on appeal, we are abdicating our appellate responsibility and are not performing our proper appellate function.

SHEPARD, J., concurs.

SHEPARD, Justice, dissenting:

I concur with the dissent of Bakes, J., but find that a facet of the case coloring my decision has not been otherwise discussed. The precipitating cause of plaintiff's termination was the development of a scheme to raise money utilizing, in part at least, the name of the principal law enforcement agency in Ada County. Principally solicited were to be businesses in the county. The record indicates the sheriff was concerned with the public reaction to and perception of the fund raising scheme. In my view, such solicitations in the name of law enforcement agencies or conducted by law enforcement personnel are undesirable and suspect. In the eyes of many of the public, they smack of overreaching and coercion, and can be the subject of abuse.

I believe the actions of the plaintiff and the defendant cannot be viewed in a vacuum, but rather must be viewed in the context of the fund raising scheme and its ramifications. I would affirm the decision of the district court which found that plaintiff's actions and participation in the scheme constituted cause for termination.