34 P.3d 37

STATE of Idaho, Plaintiff–Respondent,

v.

Edward Jessie WARFIELD,
Defendant–Appellant.

No. 26570.

Court of Appeals of Idaho.

Oct. 16, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Appellant Edward Jessie Warfield was a resident of the Aryan Nations compound near Hayden, Idaho. He was convicted of aggravated assault for his involvement in an attack upon two white motorists who drove past the compound. The principal issue presented by this appeal is whether the district court violated Warfield's First Amendment rights when the court took Warfield's racist beliefs into consideration in denying Warfield's motion for a reduction of his sentence.

## BACKGROUND

Warfield was a member of the Aryan Nations, a white supremacist organization, and was a security guard at the Aryan Nations compound. On the evening of July 1, 1998, Victoria Keenan and her son, Jason Keenan, drove past the compound on their way home from a wedding. While they were passing the compound, Jason accidentally threw his wallet out the window of the moving car. When Victoria turned the car around to go back and search for the wallet, the car backfired. Once the wallet was found, the Keenans drove away. Persons at the compound apparently mistook the sound of the backfire for a gunshot and concluded that the compound was being fired upon. This led Warfield and two other occupants of the compound to give chase in their pickup truck. Warfield drove while his two confederates sat in the pickup bed. One of the Aryans yelled at the Keenans to stop. When they did not comply, those in the bed of the pickup fired shots at the Keenans' car, hitting it five times. The Keenans' car left the highway and came to a stop in the ditch. Warfield pulled his pickup behind the disabled Keenan vehicle, and all of the Aryans approached the Keenans. The Aryans yelled and demanded to know whether the Keenans had fired shots at the compound. The Keenans denied shooting and said that the gun-like noise that the men heard was likely the backfiring of the Keenans' car. At that point, Warfield reached through the driver's side window of the car and grabbed Victoria Keenan by her hair. While thus grasping Victoria, Warfield struck her arm with the butt of his gun, called her a "white bitch," and said, "Because you're white we're gonna let you live today." Warfield and the other Aryans then returned to the pickup truck and drove away.

Warfield was charged with two counts of aggravated assault and exhibition of a deadly weapon during the commission of a crime. He and the prosecution ultimately reached a plea agreement whereby Warfield pleaded guilty to one count of aggravated assault and the remaining charges were dismissed. The district court imposed a unified five-year sentence with a two-year determinate term. Warfield thereafter filed a motion for reduction of the sentence pursuant to Idaho Criminal Rule 35. In the order denying this motion, the district court stated:

> After considering the matters presented at the motion and reassessing the original sentencing, *the Court is not persuaded that defendant has abandoned his interracial philosophy* and, as such, still presents a significant need to maintain the sentence as imposed for the protection of society.

(Emphasis added).

On appeal, Warfield submits that his racist beliefs were irrelevant to his sentencing for

an offense against white victims and that the district court's consideration of Warfield's racial philosophy in denying the Rule 35 motion therefore violated his rights to freedom of speech and freedom of association under the First Amendment to the United States Constitution and Article I, § 9 of the Idaho Constitution. Warfield requests a new Rule 35 hearing in which evidence of his racial beliefs will not be taken into consideration. Alternatively, Warfield argues that his sentence is excessive and that the district court therefore abused its discretion in declining to reduce the sentence on Warfield's motion.

## ANALYSIS

### A. Constitutional Issues

■■■ The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits government from abridging freedom of speech or the right to peaceably assemble. It has been interpreted to protect an individual's right to join groups and to associate with others holding similar beliefs. *Dawson v. Delaware*, 503 U.S. 159, 163, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Holloway v. E.C. Palmer*, 105 Idaho 220, 227, 668 P.2d 96, 103 (1983). These constitutional protections prohibit imposition of a criminal sentence on the basis of a defendant's abstract beliefs. *Dawson*, 503 U.S. at 167, 112 S.Ct. 1093; *State v. Pratt*, 125 Idaho 546, 562–63, 873 P.2d 800, 816–17 (1993).[1] On the other hand, "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Dawson*, 503 U.S. at 165, 112 S.Ct. 1093.

The United States Supreme Court has addressed this subject in a trilogy of cases, *Wisconsin v. Mitchell*, 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993); *Dawson*; and *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). In *Barclay*, the defendant was a member of the Black Liberation Army, an organization whose apparent sole purpose was to indiscriminately kill white persons and start a race war. Barclay, in concert with others, killed a white man in furtherance of the BLA's objectives, and was consequently sentenced to death. On appeal, he contended that his sentence should be vacated because the trial judge, in explaining his sentencing decision, discussed the racial motive for the murder. The Supreme Court rejected Barclay's argument, holding that the Constitution does not prohibit consideration of elements of racial hatred in a sentencing and that the judge had not erred in finding that Barclay's desire to start a race war was relevant to several aggravating factors. *Barclay*, 463 U.S. at 949–50, 103 S.Ct. 3418.

In *Dawson*, the defendant, who was white and a member of the Aryan Brotherhood, was found guilty of the murder of a white woman. In advance of the penalty hearing before the jury, the prosecution gave notice that it intended to introduce expert testimony about the origin and nature of the Aryan Brotherhood as well as evidence that Dawson had the words "Aryan Brotherhood" and a swastika tattooed on his body. Dawson argued that such evidence was inflammatory and irrelevant and would violate his First Amendment rights. Before the penalty phase began, the parties agreed that, in lieu of presentation of the proffered testimony, the jury would be read a stipulation that stated:

> The Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware.

*Dawson*, 503 U.S. at 162, 112 S.Ct. 1093. Although Dawson agreed to the stipulation in order to avoid presentation of the expert testimony, he continued to assert that admis-

---

1. Because Warfield has not argued that Article I, § 9 of the Idaho Constitution affords greater protections than the First Amendment, we will not separately address the state constitutional claim. *See State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *State v. Jordan*, 122 Idaho 771, 772 n. 2, 839 P.2d 38, 39 n. 2 (Ct. App.1992).

sion of the stipulated facts violated the Constitution. Before the United States Supreme Court, Dawson argued that because his right to associate with the Aryan Brotherhood is constitutionally protected, admission of the evidence related to that association violated his constitutional rights.

The Supreme Court found Dawson's argument to be too broad, noting that the Court had previously upheld the consideration of evidence of racial intolerance and subversive advocacy where such evidence was relevant to issues involved. *Id.* at 164, 112 S.Ct. 1093. Nevertheless, the Court held that admission of the stipulation in Dawson's case was error, not because it violated his constitutional rights but because "the narrowness of the stipulation left the Aryan Brotherhood evidence totally without relevance to Dawson's sentencing proceeding." *Id.* at 165, 112 S.Ct. 1093. The Court noted that even if the Delaware group to which Dawson belonged was racist, those beliefs had no relevance to his sentencing proceeding because the murder victim was white, like Dawson, and therefore elements of racial hatred were not involved in the killing. The Court noted that although the narrow stipulation presented no relevant evidence in Dawson's case, in many cases associational evidence would serve a legitimate purpose in showing that the defendant represents a future danger to society. As an example, the Court said that membership in an organization which endorses the killing of any identifiable group might be relevant to the question whether the defendant would be dangerous in the future, and other evidence concerning associations might be relevant in demonstrating other aggravating circumstances. *Id.* at 166, 112 S.Ct. 1093. Thus, although the evidence of association with a racist group was deemed improperly admitted in *Dawson*, the Court clearly rejected the notion that use of such evidence is unconstitutional per se.

Finally, in *Mitchell*, the Supreme Court held that where a sentence for aggravated battery was enhanced because the defendant selected the victim on account of the victim's race, the penalty enhancement was not pro-

hibited by the First and Fourteenth Amendments. The defendant's argument that the penalty-enhancement statute was invalid because it punished the defendant's discriminatory motive or racist beliefs was rejected. The Court held that it is permissible for governments to enhance penalties for bias-inspired conduct because such conduct is thought to inflict greater individual and societal harm. *Mitchell*, 508 U.S. at 487–88, 113 S.Ct. 2194.

From the foregoing decisions we glean a rule that, while the First Amendment protects an individual's right to speak and to associate with others of like beliefs, it does not prohibit consideration of a defendant's racial animus in structuring a sentence if the evidence is relevant to legitimate sentencing issues. Applying this rule in Warfield's case, we conclude that no constitutional violation occurred. Warfield was a member of the Aryan Nations and was serving as a security guard at the organization's compound when this offense occurred. The white supremacist beliefs espoused by that organization have been highly publicized and are well known in the area where this offense occurred. Although the victims in this case are white, and therefore racial bias was apparently not a motive in the assault,[2] Warfield's statement to Victoria Keenan that she would be allowed to live "because you're white" conveys a chilling implication that if the Keenans had been members of a racial minority, they might have been killed. Thus, Warfield's racist belief system was relevant in assessing the danger he presents to society, a factor that is unquestionably legitimate for consideration by a sentencing court.

At the hearing on his Rule 35 motion, in an effort to persuade the court to reduce his sentence, Warfield presented evidence that he had severed his ties with the Aryan Nations and had become racially tolerant. The district court's expression of doubt that Warfield had "abandoned his interracial philosophy," indicated that the court was not persuaded by such evidence and that the court believed Warfield still harbored racist beliefs which could cause him to pose a threat to

---

**2.** It is not apparent from the record whether Warfield and his confederates could discern that

the Keenans were white while the Aryans were pursuing and shooting at the Keenans' vehicle.

society. This was a permissible consideration and did not violate Warfield's constitutional rights of free speech or free association.

## B. Reasonableness of Sentence

■■■ Warfield also contends that his sentence is excessive and that the district court therefore abused its discretion in denying his Rule 35 motion for reduction of the sentence. A motion under Rule 35 is essentially a request for leniency and is committed to the discretion of the sentencing court. *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). On appeal, our criteria for review of rulings on Rule 35 motions are the same as those applied in determining whether the original sentence was reasonable. *Id.* Where a sentence is not illegal, the defendant bears the burden of showing that it is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Broadhead,* 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Our focus on review is upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App.1982). For purposes of appellate review, we consider the minimum period of confinement to be the probable duration of incarceration. *Broadhead,* 120 Idaho at 146, 814 P.2d at 405; *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

■■ The record here does not demonstrate that Warfield's sentence is excessive. His crime was extremely serious; Warfield drove a vehicle in pursuit of the Keenans while his confederates shot at the Keenans. The gunfire could have led to the death of one or both of the Keenans. In light of the violent nature of this offense, we perceive no abuse of discretion in the denial of Warfield's motion for reduction of his sentences.

The district court's order denying Warfield's motion for reduction of his sentence is affirmed.

Chief Judge SCHWARTZMAN and Judge PERRY concur.