**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 37702 & 37703**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 28** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: May 12, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| LUNDE EUGENE JUSTICE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. John K. Butler, District Judge.

Judgments of conviction and sentences for one count of grand theft and four counts of forgery, <u>modified</u> <u>in</u> <u>part</u> <u>and</u> <u>affirmed</u> <u>in</u> <u>part</u>.

Molly J. Huskey, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

In these consolidated appeals, Lunde Eugene Justice appeals from his judgments of conviction and sentences for one count of grand theft and four counts of forgery. Specifically, Justice contends that the district court abused its discretion by violating his First Amendment rights by considering his racist beliefs at sentencing and by imposing excessive sentences. For the reasons set forth below, we modify his sentences in part and affirm his sentences in part.

**I.**

**FACTS AND PROCEDURE**

In Docket No. 37702, Justice pled guilty to one count of grand theft. I.C. §§ 18-2403, 18-2407. Justice was charged with this crime after he stole a pickup from an acquaintance. He had asked to borrow the truck and, after the owner declined, Justice stole the truck. He was found a few days later with the truck in Elko, Nevada. The truck was returned to the owner, who did not make a request for restitution. In Docket No. 37703, Justice pled guilty to four counts of

1

forgery. I.C. § 18-3601. Justice took checks from a friend, forged them, and cashed them at various businesses. The victims claimed restitution in the amount of $1,345. In exchange for his guilty pleas, the state agreed to dismiss additional charges and to recommend a ten-year fixed sentence on each count, to run concurrently. Following Justice's guilty pleas, the district court ordered a presentence investigation report (PSI) and a mental health examination pursuant to I.C. § 19-2524.

Justice, who was twenty-two years old when sentenced, is an avowed racist. His tattoos include swastikas, the words "white pride," and a confederate flag. He is a member of a white supremacist prison gang known as the "Aryan Knights." He told his mental health evaluator, "Something is wrong with me because I don't feel guilty for doing things. I mean I could beat a black kid to death and I wouldn't feel bad at all." He stated that he does not respect anyone who is African-American or Asian. His evaluator stated that Justice spent a great deal of time thinking about racist ideas and that he watched for others to "disrespect" him so he would feel justified in verbally or physically assaultive behavior.

At his sentencing hearing, Justice declined to review the PSI. After receiving argument and the state's recommendation, the district court, relying on the PSI and the mental health assessment, sentenced Justice to a fixed term of fourteen years for grand theft, a fixed term of fourteen years for the first count of forgery, and indeterminate terms of ten years for each of the remaining three counts of forgery, all consecutive. Thus, his aggregate sentence was fifty-eight years with twenty-eight years fixed. Justice appeals.

## II.

## ANALYSIS

Justice asserts that the district court violated his First Amendment rights by considering his racist beliefs during sentencing. Further, Justice contends that the district court abused its discretion by imposing excessive sentences.

### A. First Amendment Claim

Justice asserts that the district court violated his rights of freedom of speech and association under the First Amendment to the United States Constitution by relying upon Justice's racist beliefs and his affiliation with a racist group when imposing his sentences. The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits government from abridging freedom of speech or the right to peaceably

2

assemble. It has been interpreted to protect an individual's right to join groups and to associate with others holding similar beliefs. *Dawson v. Delaware*, 503 U.S. 159, 163 (1992); *Holloway v. Palmer*, 105 Idaho 220, 227, 668 P.2d 96, 103 (1983). These constitutional protections prohibit imposition of a criminal sentence on the basis of a defendant's abstract beliefs. *Dawson*, 503 U.S. at 167; *State v. Pratt*, 125 Idaho 546, 562-63, 873 P.2d 800, 816-17 (1993).

This Court has previously addressed the use of a defendant's racist beliefs and membership in a racist organization at sentencing. In *State v. Warfield*, 136 Idaho 376, 34 P.3d 37 (Ct. App. 2001), the defendant pled guilty to aggravated assault after he and other members of a racist organization fired shots at a car traveling near their organization's compound. The occupants of the car were a white couple whose car backfired while passing the compound. Warfield and his confederates fired shots at the car, which then pulled off the road and stopped in a ditch. Warfield approached the car and reached inside, grabbing the female occupant's hair and striking her arm with the butt of his gun. He then told the couple that he would let them live because they were white.

Warfield filed an I.C.R. 35 motion for reduction of his sentence, which the district court denied. Warfield appealed, arguing that the district court violated his First Amendment rights to freedom of speech and association when the district court considered his racist beliefs in denying the motion. After a review of the United States Supreme Court precedent on this issue, this Court held:

> From the foregoing decisions we glean a rule that, while the First Amendment protects an individual's right to speak and to associate with others of like beliefs, it does not prohibit consideration of a defendant's racial animus in structuring a sentence if the *evidence is relevant to legitimate sentencing issues*. Applying this rule in Warfield's case, we conclude that no constitutional violation occurred. Warfield was a member of the [racist organization] and was serving as a security guard at the organization's compound when this offense occurred. The white supremacist beliefs espoused by that organization have been highly publicized and are well known in the area where this offense occurred. Although the victims in this case are white, and therefore racial bias was apparently not a motive in the assault, Warfield's statement to [the female occupant] that she would be allowed to live "because you're white" conveys a chilling implication that if the [couple] had been members of a racial minority, they might have been killed. Thus, Warfield's racist belief system was relevant in assessing the danger he presents to society, a factor that is unquestionably legitimate for consideration by a sentencing court.

*Warfield*, 136 Idaho at 379, 34 P.3d at 40 (emphasis added) (footnote omitted).

3

In *Warfield*, this Court relied in part upon the United States Supreme Court's decision in *Dawson*. In that case, the white defendant was found guilty of the murder of a white woman. During the penalty phase of the trial, the parties stipulated that a description of a racist organization to which Dawson belonged would be read to the jury. On appeal to the United States Supreme Court, Dawson argued that his right to associate with the racist group was protected by the First Amendment and admission of evidence related to his association with that group violated his constitutional rights. The Court held that the stipulation was irrelevant to the sentencing proceeding because the murder victim was white. *Dawson*, 503 U.S. at 166. However, the Court also stated:

> In many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future. Other evidence concerning a defendant's associations might be relevant in proving other aggravating circumstances. But the inference which the jury was invited to draw in this case tended to prove nothing more than the abstract beliefs of the [racist organization].

*Id.*

Justice pled guilty to grand theft and forgery, crimes which were not related to his racist beliefs or his affiliation with a racist organization. Following the state's recommendation of a fixed sentence of ten years, the district court concluded that, based on the PSI and the mental health examination, Justice posed a significant risk to society and had no desire to rehabilitate. The district court continued:

> It is clear, based on your racial views, that you have no respect for others. It is clear to this court that you have a significant antisocial personality. You indicate that you don't like being told what to do and have no remorse for your prior past conduct.
> Clearly, you've had problems since the age of ten. I think the thing that troubles me the most is, looking at the mental health evaluation, you indicate, clearly, that *you spend a great deal of time thinking about racist ideas. You like to watch others to--and if they disrespect you, you feel that you're justified in verbally and physically abusing others.*
> The comments here are very extraordinary to this court, the fact that you just want to top time. You basically want to go into the penitentiary the person you are today, and you want to come out of the penitentiary the person you are today, and society cannot put up with that. And I will tell you right now that you deserve significant time, based upon your current behavior and your prior behavior, and with all due respect, ten years is not adequate.

(Emphasis added.)

It appears from the statement above that the district court considered Justice's racist ideas and disrespect for minorities in the context of Justice's use of such beliefs to justify abusing others. As described by the United States Supreme Court in *Dawson* and this Court in *Warfield*, a defendant's association with a racist organization or a defendant's racist beliefs may be considered by a court at sentencing when relevant to a legitimate sentencing factor, including the protection of society. *Dawson*, 503 U.S. at 166; *Warfield*, 136 Idaho at 379, 34 P.3d at 40. In *Dawson*, the Court determined that a description of a racist organization was irrelevant to Dawson's sentence because it did nothing more than illustrate the organization's racist beliefs. *Dawson*, 503 U.S. at 166. In this case, Justice's comments to the mental health evaluator went beyond a mere description of his racist beliefs. Rather, Justice's comments involved threats against people whom Justice did not respect, specifically African-Americans and Asians. Such comments were relevant to assess the danger he presented to society, a factor that is unquestionably legitimate for consideration by a sentencing court. Therefore, the district court's consideration of Justice's comments to the evaluator regarding his racist beliefs did not violate Justice's constitutional rights.

## B.     Excessive Sentences

Justice acknowledges that his sentences are within the statutory maximum. However, Justice argues that the district court abused its discretion at sentencing because it did not properly consider the mitigating factors present in his case. Specifically, Justice argues that the district court did not give proper consideration to Justice's age, abusive childhood, substance abuse problem, nature of his crimes, and his acceptance of responsibility for his actions. The state responds that Justice's extensive prior record, lack of remorse for the crimes committed, antisocial behavior, and statements that he had no desire to change demonstrate that the district court did not its abuse discretion.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it

5

appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). In order to prevail on a claim that a sentence represents an abuse of discretion, the defendant must show in light of the criteria, [that the] sentence was excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Small,* 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984). Where reasonable minds might differ, the discretion vested in the trial court will be respected, and this court will not supplant the views of the trial court with its own. *Small,* 107 Idaho at 505, 690 P.2d at 1337. In order to prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005).

During sentencing, the district court indicated that it had reviewed the four goals of sentencing, citing protection of society as its primary concern. The district court also stated that it considered Justice's character, the nature of the underlying offenses, and his prior record. In doing so, the district court also reviewed the PSI and the mental health examination. The PSI revealed that Justice had previously been convicted of four felonies, including burglary, escape, grand theft, and assault or battery upon certain personnel. Justice was sentenced to concurrent aggregate unified terms of ten years, with minimum periods of confinement of three years, for the four prior felonies. The district court retained jurisdiction for 180 days but, due to Justice's disciplinary problems, relinquished jurisdiction and ordered execution of his sentences. After being incarcerated for over three years, Justice was paroled. While on parole, Justice committed numerous violations, including the crimes charged in the instant case.

When asked by the presentence investigator what problem areas in Justice's life contributed to his criminal behavior, Justice responded that "being told what to do" was the biggest factor. Justice also indicated that he did not believe that he could be successful in the community because he did not like being told what to do and wished to be sent back to prison in order to serve the remainder of his previous sentences or "top out" his time. In addition, Justice acknowledged that he did not feel any remorse for the crimes he committed in the past. The PSI also indicated that Justice began drinking at an early age and had difficult relationships with his family.

During his mental health examination, Justice stated that he was abused by his father and that he had racist thoughts and did not respect anyone who is African-American or Asian. He further indicated that he felt no remorse for anything he had done in his past. The mental health evaluator diagnosed Justice as being antisocial and concluded that it would be difficult to provide any appropriate treatment for Justice, even in a correctional setting.

Prior to imposing sentence, the district court stated:

> Mr. Justice, certainly this court recognizes that you do have a significant prior record. In reviewing the content of the PSI, it appears to this court that you have no desire to change what you characterize as your life style.
> Certainly, I can tell you that there is a number of factors and information contained within the PSI that clearly indicates to this court that you are a significant risk to society. You have no desire to rehabilitate.

Sentence reviews have long been conducted by the Idaho appellate courts. It is a responsibility with which we are charged. *See State v. Adams,* 99 Idaho 75, 76-79, 577 P.2d 1123, 1124-27 (1978) (Bistline, J. dissenting) (discussion of the history of appellate review of sentences in this state). Our Supreme Court has described the general objectives of appellate sentence review as:

> (i)  to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
> (ii)  to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
> (iii)  to promote respect for the law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
> (iv)  to promote the development and application of criteria for sentencing which are both rational and just.

*State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978), *quoting* ABA Standards Relating to Appellate Review of Sentences at 7 (Approved Draft 1968). *See also Brown,* 121 Idaho at 393, 825 P.2d at 490.

The task of appellate sentence review is neither easy nor well defined. We are especially cognizant of our Supreme Court's very recent reaffirmation of the principle that we must afford deference to trial judges in sentencing matters. *State v. Windom,* ___ Idaho ___, ___ P.3d ___ (2011) (*reh'g pending*). With our obligation to review sentences in mind, along with the standard of review (including our obligation to defer to the trial judge), we undertake review in this case.

Here, we begin our analysis focusing on Justice's age and the length of the fixed portion of the sentences imposed for the property crimes committed by him. As always, we consider the entire sentence, but we presume that the fixed portion of the sentence will be the defendant's probable term of confinement. *Oliver,* 144 Idaho at 726, 170 P.3d at 391. We have considered Justice's young age, twenty-one at the time of the offenses. Justice will first become eligible for parole for the crimes of grand theft and forgery in 2037 when he is fifty years old. If he is not paroled, he will be released when he is eighty years old. At the time of sentencing, he anticipated a fixed sentence and expressed a desire to "top out" his sentence, apparently recognizing his inability to successfully complete parole. We note, however, that when Justice expressed a desire to serve a fixed sentence without parole both the state and his own attorney had agreed to recommend ten-year fixed concurrent sentences. Instead, Justice received two consecutive fourteen-year sentences. His bravado in requesting a fixed sentence might have been tempered somewhat had he been more cognizant of the prospect of a fixed sentence of twenty-eight years.

In connection with Justice's relative youth, we have also considered the possibility of rehabilitation. In that regard, we note that any programs of rehabilitation available to Justice in prison will certainly be completed in significantly less than twenty-eight years. Even if Justice decides not to participate in such programs, the parole board will, no doubt, consider such failure when Justice becomes eligible for parole. The aggregate fixed sentence of twenty-eight years is longer than reasonably necessary to achieve the goal of rehabilitation.

We have also considered the amount of harm caused by Justice's crimes. The crimes for which he was sentenced were property crimes consisting of theft of a pickup and forgery of

checks that he stole from a friend. The pickup was recovered and the owner did not request restitution. The victims of the forgeries claimed restitution of $1,345. These are serious felonies which we do not excuse, but these crimes do not approach the level of crimes of violence against persons or crimes otherwise causing great harm to the victims or to society. Most of Justice's prior offenses were property crimes or status offenses. The most egregious prior crime of violence (assault/battery upon certain personnel) was committed when Justice was seventeen years old. It is plain that Justice has lived a practically uninterrupted life of crime since he was ten years old, but most of the crimes were not the kind for which society would expect severe retribution. The aggregate fixed term of twenty-eight years imposed here is longer than reasonably necessary to accomplish the goal of retribution.

Because of the numerous aggravating factors in this case, we agree with the trial judge that Justice presently poses an unacceptable risk to society and that he must be incarcerated for a significant period of time. In our view, however, the fixed portion of the sentences imposed by the court is longer than necessary to accomplish the goals of sentencing. This case bears significant resemblance to *State v. Dunnagan,* 101 Idaho 125, 609 P.2d 657 (1980). There, the two defendants, aged twenty and twenty-one, committed theft crimes. Both had several prior felonies on their records and low I.Q. scores. The trial court imposed consecutive indeterminate fourteen-year sentences for two counts of grand larceny. Thus, the defendants both received aggregate indeterminate sentences of twenty-eight years. On appeal, our Supreme Court, noting the youth and very low intelligence of the defendants, remanded with instructions that the sentences run concurrently. The court noted that fourteen years should be a sufficient time for the defendants to benefit from rehabilitation programs in prison. *Dunnagan,* 101 Idaho at 126, 609 P.2d at 658. There are, of course, differences. Justice has expressed no remorse, instead opting for an attitude of defiance, and there is no evidence that he is not of normal intelligence. However, Justice's sentences are much more severe than those that were reduced in *Dunnagan* because his consecutive fourteen-year sentences are *fixed*, leaving him ineligible for parole for twenty-eight years, whereas the *Dunnagan* sentences were indeterminate. Under the Idaho sentencing law at that time, the Dunnagans would have been eligible for parole at the discretion of the parole board, generally within the first one-third of their aggregate sentences. *See* I.C. § 20-223 (1971); *State v. Toohill*, 103 Idaho 565, 569, 650 P.2d 707, 711 (Ct. App. 1982). Further, even after completion of Justice's fixed term, he could remain incarcerated throughout

his indeterminate term of thirty years. Justice's defiant attitude and his desire to serve out his prison sentence may change with age. If not, he will, presumably, be denied parole.

Accordingly, we conclude that Justice's fourteen-year fixed sentences for grand theft and one count of forgery should be modified to run concurrently. His consecutive indeterminate sentences for the remaining three counts of forgery will not be altered. This will result in an aggregate unified sentence of forty-four years with fourteen years fixed.

## III.

## CONCLUSION

The district court's consideration of Justice's comments to the mental health evaluator regarding his racist beliefs did not violate Justice's First Amendment rights of freedom of speech and freedom of association. The district court did, however, abuse its discretion in ordering that the two fourteen-year fixed sentences be served consecutively. Therefore, Justice's consecutive fourteen-year determinate sentences for forgery and one count grand theft are hereby modified to run concurrently. In all other respects, the sentences imposed by the district court are affirmed. The district court is hereby directed to enter an amended judgment consistent with this opinion.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**